UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x    ECF case
JANNINE N. KOURBAGE,                                             Index No.:
                    Plaintiff,

                                                                  **COMPLAINT**
                                                                  **AND JURY DEMAND**

-against-

THERMIGEN, LLC, THERMIEYES, ALMIRALL, S.A.,
KEVIN O'BRIEN, Individually, GREG ALMOND, Individually,
KATHRYN HINDERLAND, Individually,
and THERESA GUY-TIPPIE, Individually,

                    Defendants.
------------------------------------------------------------x

Plaintiff Jannine N. Kourbage ("Plaintiff" or "Ms. Kourbage"), by her attorney, Anne Donnelly Bush, as and for her Complaint against the Defendants herein, ALMIRALL, S.A., THERMIGEN, LLC, THERMIEYES, KEVIN O'BRIEN., Individually, GREG ALMOND, Individually, KATHRYN HINDERLAND, Individually, and THERESA GUY-TIPPIE, Individually, on information and belief, allege at all relevant times herein, the following:

## PRELIMINARY STATEMENT

1.    Plaintiff brings her action for disability discrimination, gender discrimination and discriminatory failure to promote and/or hire pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12101, et seq., ("ADA") as amended by the ADA Amendments Act of 2008 (Public Law 110-325) ("ADAAA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), New York State Human Rights Law, Executive Law §290, *et seq.* ("SHLR"), the New York City Human Rights Law, §8-107, *et seq.* of the Administrative Code ("CHRL"), and the tort of privacy.

1

## JURISDICTION

2.  Jurisdiction is conferred upon the Court by 28 U.S.C. §1331, §1343 and/or 41 U.S.C. §2000e-5(f)(3).

## VENUE

3.  Venue lies in the Eastern District of New York in that the unlawful actions complained of and the records relevant to such practices are maintained and administered within this district.

4.  All conditions precedent to the institution of this suit have been satisfied.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.  Plaintiff filed a Complaint with the United States Equal Employment Opportunity Commission, ("EEOC") on June 7, 2017, under Federal charge number 520-2018-00253. These filings satisfied the requirements of 42 U.S.C. s 2000c-5. Her complaint charges disability, gender, and failure to promote/hire against Defendants. These filings were within 300 days after one or more occurrences of Defendant's discriminatory conduct against Plaintiff.

6.  The EEOC issued Plaintiff a Right to Sue on February 15, 2018. Copy attached. Plaintiff files this action within ninety (90) days of receipt of same.

## THE PARTIES

Plaintiff:

7.  Plaintiff is a female residing in Breezy Point, New York 11697.

8.  Plaintiff is over the age of 40.

9.  Plaintiff was at all relevant times an eligible employee as that term is understood within the ADA, ADAAA, ADEA, Title VII, SHRL and CHRL.

10. Plaintiff at all relevant times suffered and suffers from breast cancer.

11. Plaintiff was diagnosed with invasive breast cancer on or about January 5, 2017.

12. Plaintiff underwent a double mastectomy in April 2017.

13. Plaintiff is substantially limited in many of the major life activities because of her breast cancer.

14. Plaintiff is and was, at all relevant times, disabled as that term is understood within Title VII, the ADA, ADAAA, SHRL and CHRL, had a record of such a disability and/or was perceived as being disabled by Defendants.

15. Plaintiff was an employee of Defendant ThermiGen, L.L.C ('ThermiGen").

16. Plaintiff at all relevant times was employed in a sub-division of ThermiGen named "ThermiEyes".

17. Plaintiff was employed as a Regional Sales Consultant.

18. Plaintiff worked from home in Queens, New York.

19. Plaintiff earned an annual salary of $75,000.00.

20. Plaintiff earned commission, at a minimum of $200,000 annually.

21. Plaintiff had a car allowance of $7800 annually.

Defendants:

22. Defendant ThermiGen LLC ("ThermiGen") is a foreign limited liability company providing pharmaceutical services doing business in New York State.

23. Defendant ThermiGen has a principal location at 8304 Esters Blvd, # 890, Irving, Texas 75063.

24. Defendant ThermiGen employs in excess of 100 persons within various locations throughout the USA.

25. Defendant ThermiEyes ("ThermiEyes") is a foreign limited liability company providing pharmaceutical services doing business in New York State.

26. Defendant ThermiEyes has a principal location at 8304 Esters Blvd, # 890, Irving, Texas 75063.

27. Defendant ThermiEyes is a division of ThermiGen.

28. Defendant ThermiEyes is wholly owned and controlled by ThermiGen

29. Defendant Almirall S.A. ("Almirall") is a foreign corporation providing pharmaceutical services doing business in New York State.

30. Defendant Almirall has headquarters at Ronda General Mitre 151, 08022 Barcelona, Spain.

31. Defendant Almirall purchased ThermiGen in February 2016 for in excess of $83 million.

32. Defendant Almirall is the parent company of ThermiGen.

33. Defendant Almirall is the parent company of ThermiEyes.

34. Defendant Kevin O'Brien ("O'Brien") is a Caucasian male employee of ThermiGen, and at all relevant times occupied the position of President of ThermiGen, LLC.

35. Defendant Greg Almond ("Almond") is a Caucasian male employee of ThermiGen, and at all relevant times occupied the position of Vice President of Business Development and Sales in the ThermiEyes department.

36. Defendant Almond was Plaintiff's direct Manger.

37. Defendant Kathryn Hinderland ("Hinderland") is a female employee of ThermiGen, and at all relevant times occupied the position of Human Resources Consultant.

38. Defendant Theresa Guy-Tippie ("Guy-Tippie") is a female employee of ThermiGen, and at all relevant times occupied the position of Human Resources Manager.

39. Defendant Allmiral is an employer within the meaning of the laws asserted herein.

40. Defendant ThermiGen is an employer within the meaning of the laws asserted herein.

41. Defendant ThermiEyes is an employer within the meaning of the laws asserted herein.

## STATEMENT OF FACTS

42. Plaintiff was hired by Defendant ThermiGen, LLC, as a Regional Sales Consultant, in July 2016.

43. Plaintiff was hired by Defendant ThermiGen, LLC, to their ThermiEyes division.

44. Defendant ThermiEyes, at all relevant times, consisted of approximately four (4) people, Greg Almond, the Vice President of Business Development and Sales, Plaintiff, Steve De Bonis ("De Bonis") and Scott Schlachter, the three Regional Sales Consultants.

45. Defendant ThermiEyes, at all relevant times, employed four (4) people.

46. Defendant ThermiEyes, at all relevant times, employed Greg Almond as the Vice President of Business Development and Sales.

47. Defendant ThermiEyes, at all relevant times, employed Plaintiff, Steve De Bonis ("De Bonis") and Scott Schlachter, as Regional Sales Consultants.

48. Plaintiff, at all relevant times, was the only female in the ThermiEyes division.

49. Plaintiff, at all relevant times, was the only disabled person in the ThermiEyes division.

50. Defendant O'Brien, in or about October 2016, informed Plaintiff that the funding to build the entire ThermiEyes division was budgeted through 2017.

### Plaintiff is Diagnosed with Breast Cancer and Becomes Disabled

51. Plaintiff was diagnosed with invasive breast cancer on or about Thursday, January 5, 2017.

52. Plaintiff had a double mastectomy in April 2017.

53. Plaintiff continues to undergo treatment for breast cancer, and has endured multiple surgeries.

54. Plaintiff informed Almond of her breast cancer diagnosis on or about Friday, January 6, 2017.

55. Plaintiff explicitly asked Almond not to mention her cancer diagnosis to anyone.

56. Upon information and belief, Almond told Defendants Hinderland and Guy-Tippie of the Human Resources department about Plaintiff's cancer diagnosis, on or about Friday, January 6, 2017.

57. Defendant Almond told Defendants Hinderland and Guy-Tippie of Plaintiff's cancer diagnosis without Plaintiff's permission.

58. Defendant Almond informed Defendants Hinderland and Guy-Tippie of Plaintiff's cancer diagnosis with no respect for her personal privacy.

59. On Monday, January 9, 2017, at 1:10pm., Defendant Hinderland, the Human Resources Consultant, sent an email to Plaintiff, asking Plaintiff to call her.

60. Plaintiff arranged to call Hinderland at 4pm on January 9, 2017.

61. Plaintiff called Hinderland at 4pm on January 9, 2017, and was surprised to find that Almond and Guy-Tippie were also on the phone conference.

62. Defendant Hinderland said to Plaintiff, *"We understand that you have been diagnosed with breast cancer."*

63. Defendant Hinderland and Defendant Guy-Tippie began to discuss Plaintiff's cancer diagnosis.

64. Plaintiff was horrified.

65. Defendant Almond had ignored Plaintiff's explicit requests for privacy.

66. Defendant Hinderland said to Plaintiff, *"Do you think in your current condition, you can do your job?"*

6

67. Plaintiff was shocked by Hinderland's question.

68. Plaintiff quickly responded, *"I can absolutely do my job, there is no problem here."*

69. Plaintiff immediately became worried that she would be fired because of her cancer diagnosis.

70. That same day, Monday, January 9, 2017, Plaintiff emailed Hinderland and Guy-Tippie at 5:46 pm, and wrote, *"Thank you both. I'm completely capable of continuing my job and being super successful. Speak soon."*

71. Defendant Hinderland and Defendant Guy-Tippie did not respond to Plaintiff's email.

## **Plaintiff is Fired**

72. On or about Thursday, January 12, 2017, Defendant Almond informed Plaintiff that the entire ThermiEyes department was being eliminated.

73. Defendant Almond informed Plaintiff that she had been fired.

74. Plaintiff was shocked and upset.

75. Plaintiff was fired by Defendant Almond approximately six (6) days after informing Defendant Almond that she had been diagnosed with breast cancer.

76. Plaintiff was fired by Defendant Almond three (3) days after the conference call between Plaintiff, Almond, Hinderland and Guy-Tippie, to discuss Plaintiff's breast cancer diagnosis.

77. There is a clear causal nexus between Plaintiff's diagnosis of disability, and Plaintiff being fired.

78. Defendants fired Plaintiff because of her disability.

79. Defendants fired Plaintiff because of her gender.

80. Plaintiff later discovered that the entire ThermiEyes department had NOT in fact been shut down.

**Plaintiff Is Passed Over For Promotion and/or Hire**

81. Plaintiff was not hired back to ThermiEyes.

82. Defendant Almond continued to work for ThermiEyes.

83. DeBonis continued to work for ThermiEyes.

84. Defendants hired De Bonis to a newly created position of "ThermiEyes Specialist."

85. Upon information and belief, De Bonis' job duties as "ThermiEyes Specialist" were essentially the same as those under his previous position of "Regional Sales Consultant."

86. De Bonis is not disabled.

87. De Bonis is a male.

88. De Bonis is significantly less qualified and experienced than Plaintiff with respect to selling and marketing medical capital equipment to eye doctors.

89. Plaintiff was the logical choice for the position of "ThermiEyes Specialist/ Regional Sales Consultant" due to her extensive skills and experience.

90. Plaintiff's work experience, credentials and qualifications were extensive in the areas of managing, selling, and the marketing of medical capital equipment to eye doctors, including Ophthalmologists, Optometrist and Eye Care Specialists.

91. Defendants did not post the vacancy for the position to which De Bonis was hired to, in January 2017.

92. Defendants did not post the vacancy for the position to which De Bonis was promoted to, in January 2017.

93. Defendants did not post the vacancy for the position of, "ThermiEyes Specialist."

94. Defendant's own policies and procedures dictate that open positions are posted.

95. Upon information and belief, open positions are routinely posted on LinkedIn, Indeed, and Monster.

96. In contradiction to its own policies and procedures, Defendant did not post the position of "ThermiEyes Specialist."

97. The position of "ThermiEyes Specialist" was open and available.

98. Plaintiff was qualified for the position of "ThermiEyes Specialist."

99. Plaintiff was not aware of the vacant position for a "ThermiEyes Specialist" prior to De Bonis' appointment to it.

100. Plaintiff was not made aware of the vacant position for a "ThermiEyes Specialist" and so Plaintiff <u>could not apply</u> for the position of "ThermiEyes Specialist."

101. Defendants discriminated against Plaintiff by failing to hire or promote her to the position of "ThermiEyes Specialist" because of her disability.

102. Defendants discriminated against Plaintiff by failing to hire or promote her to the position of "ThermiEyes Specialist" because of her gender.

103. Plaintiff's last day of work was Thursday, January 12, 2017.

104. Plaintiff was scheduled to attend ThermiGen's National Sales Meeting on or about January 12, 2017.

105. Plaintiff, after being fired, had to cancel the flight and hotel which she had personally paid for.

106. Defendants O'Brian and Almond were, at all relevant times, the main decision makers who hired and fired staff in the ThermiEyes division.

107. Defendants O'Brian, Almond, Hinderland and Guy-Tippie were, at all relevant times, the main decision makers who failed to post the vacant position of "ThermiEyes Specialist."

108. Defendants O'Brian, Almond, Hinderland and Guy-Tippie were, at all relevant times, the main decision makers who failed to promote and /or hire Plaintiff to the vacant position of "ThermiEyes Specialist."

109. Defendants O'Brian, Almond, Hinderland and Guy-Tippie were, at all relevant times, the main decision makers who appointed a non-disabled, less qualified, less experienced male to the position of "ThermiEyes Specialist" instead of Plaintiff.

110. Upon information and belief ThermiEyes is still in operation.

111. Upon information and belief ThermiEyes continues to hire staff.

112. Upon information and belief ThermiEyes continues to hire Regional Sales Consultants.

113. Defendants O'Brien, Almond, Hinderland and Guy-Tippie were and are employees, agents and servants of the Defendants Almirall, ThermiGen and ThermiEyes.

114. Defendants O'Brien, Almond, Hinderland and Guy-Tippie acted within the scope of their employment, in furthering the business interests of Defendants Almirall, ThermiGen and ThermiEyes.

115. Defendants Almirall, ThermiGen and ThermiEyes, instigated, controlled, directed or Defendant O'Brien, Almond, Hinderland and Guy-Tippie's acts as alleged here.

116. Defendants Almirall, ThermiGen and ThermiEyes, committed, were aware of, authorized and/or condoned the discriminatory and unlawful behavior against Plaintiff.

117. Defendants Almirall, ThermiGen and ThermiEyes, committed the actions complained of here intentionally, and constitute a continuing policy and practice of discrimination.

118. Defendant O'Brien was primarily responsible for the discriminatory actions against Plaintiff, including disability, and gender discrimination and failure to promote and failure to hire Plaintiff because of her disability, and gender, and is therefore individually liable.

119. Defendant Almond was primarily responsible for the discriminatory actions against Plaintiff, including disability and gender discrimination and failure to promote and failure to hire Plaintiff because of her disability and gender, and is therefore individually liable.

120. Defendant Hinderland was primarily responsible for the discriminatory actions against Plaintiff, including disability and gender discrimination and failure to promote and failure to hire Plaintiff because of her disability, age and gender, and is therefore individually liable.

121. Defendant Guy-Tippie was primarily responsible for the discriminatory actions against Plaintiff, including disability and gender discrimination, and failure to promote and failure to hire Plaintiff because of her disability and gender, and is therefore individually liable.

122. Defendants' unlawful action have caused Plaintiff enormous financial hardship and emotional distress.

123. Defendants' discrimination of Plaintiff as described here was done with oppression, malice, and/or a reckless or conscious indifference or disregard to Plaintiff's protected rights, and Plaintiff seeks punitive damages.

## STATEMENT OF CLAIMS

### COUNT ONE: DISABILITY DISCRIMINATION
### (ADA and ADAAA)

124. The allegations of the preceding paragraphs are repeated here as if fully stated.

125. Defendants intentionally discriminated against Plaintiff because of her disability in violation of the ADA and ADAAA.

126. Defendants fired Plaintiff because of her disability.

127. Defendants failed to promote and/or hire Plaintiff because of her disability.

128. Plaintiff was not awarded the position under circumstances giving rise to an inference of discrimination.

129. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

130. Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

131. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT TWO: DISABILITY DISCRIMINATION
## (TITLE VII)

132. The allegations in the preceding paragraphs are repeated here as if fully stated.

133. Defendants intentionally discriminated against Plaintiff because of her disability in violation of Title VII.

134. Defendants fired Plaintiff because of her disability.

135. Defendants failed to promote and/or hire Plaintiff because of her disability.

136. Plaintiff was not awarded the position under circumstances giving rise to an inference of discrimination.

137. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

138. Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

139. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT THREE: GENDER DISCRIMINATION
## (TITLE VII)

140. The allegations in the preceding paragraphs are repeated here as if fully stated.

141. Defendants intentionally discriminated against Plaintiff because of her gender in violation of Title VII.

142. Defendants fired Plaintiff because of her gender.

143. Defendants failed to promote and/or hire Plaintiff because of her gender.

144. Plaintiff was not awarded the position under circumstances giving rise to an inference of discrimination.

145. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

146. Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

147. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

COUNT FOUR: DISABILITY DISCRIMINATION
(SHRL)

148. The allegations in the preceding paragraphs are repeated here as if fully stated.

149. Defendants intentionally discriminated against Plaintiff because of her disability in violation of the SHRL.

150. Defendants fired Plaintiff because of her disability.

151. Defendants failed to promote and/or hire Plaintiff because of her disability.

152. Plaintiff was not awarded the position under circumstances giving rise to an inference of discrimination.

153. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

154. Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

155. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

COUNT FIVE: GENDER DISCRIMINATION
(SHRL)

156. The allegations in the preceding paragraphs are repeated here as if fully stated.

157. Defendants intentionally discriminated against Plaintiff because of her gender in violation of the SHRL.

158. Defendants fired Plaintiff because of her gender.

159. Defendants failed to promote and/or hire Plaintiff because of her gender.

160. Plaintiff was not awarded the position under circumstances giving rise to an inference of discrimination.

161. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

162. Defendants' actions were a malicious, willful and reckless violation of Plaintiff's rights.

163. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT SIX: DISABILITY DISCRIMINATION
### (CHRL)

164. The allegations in the preceding paragraphs are repeated here as if fully stated.

165. Defendants intentionally discriminated against Plaintiff because of her disability in violation of CHRL.

166. Defendants fired Plaintiff because of her disability.

167. Defendants failed to promote and/or hire Plaintiff because of her disability.

168. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

169. Defendants' actions were carried out with reckless disregard and in violation of Plaintiff's rights.

170. Defendants O'Brien, Almond, Hinderland and Guy-Tippie personally aided and abetted in the discrimination.

171. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT SEVEN: GENDER DISCRIMINATION
### (CHRL)

172. The allegations in the preceding paragraphs are repeated here as if fully stated.

173. Defendants intentionally discriminated against Plaintiff because of her gender in violation of Title VII.

174. Defendants fired Plaintiff because of her gender.

175. Defendants failed to promote and/or hire Plaintiff because of her gender.

176. Plaintiff suffered damages as a result of Defendants discriminatory conduct.

177. Defendants' actions were carried out with reckless disregard and in violation of Plaintiff's rights.

178. Defendants O'Brien, Almond, Hinderland and Guy-Tippie personally aided and abetted in the discrimination.

179. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $1,000,000.

## COUNT EIGHT: RIGHT TO PRIVACY
### (Tort)

180. The allegations in the preceding paragraphs are repeated here as if fully stated.

181. Defendants interfered with and denied Plaintiff her right to privacy.

182. Defendants, Almond, Hinderland and Guy-Tippie personally interfered with and denied Plaintiff her right to privacy

183. Plaintiff has thereby been damaged in an amount as yet undetermined, but exceeding $500,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that judgment be granted as follows:

a. The amount sought for each cause of action;

b. Liquidated damages;

c. Punitive damages exceeding $1,000,000;

d. An order enjoining Defendants from engaging in the wrongful practices alleged herein;

e. Attorney's fees and costs; and

15

f. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 5, 2018

        Respectfully submitted,

        Law Offices of Anne Donnelly Bush

         /ss

        _____

        Anne Donnelly Bush, Esq. (AD5486)
        *Attorney for the Plaintiff*
        43 West 43rd Street, Ste. 117
        New York, New York 10036-7424
        Tel.: (914) 239-3601
        Fax: (914) 219-3145